RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

IN RE: FLINT WATER CASES.

───────────────────────────────────────────────

MARLANA SIRLS et al. (19-1961); LEANNE WALTERS, individually and as next friend of her children G.W.1, G.W.2, K.M., J.D. et al. (19-2000 /2005 /2008 /2011 /2012)

>    Nos. 19-1961/1975/1983 /2000/2005/2008/2011/2012

*Plaintiffs-Appellees*,

*v.*

STATE OF MICHIGAN et al.,

*Defendants*,

STEPHEN BUSCH, PATRICK COOK, MICHAEL PRYSBY, and BRADLEY WURFEL (19-1961/2000); ADAM ROSENTHAL (19-1975/2005); RICHARD DALE SNYDER, ANDY DILLON, and GRETCHEN WHITMER (19-1983/2008); CITY OF FLINT, MICHIGAN, HOWARD CROFT, DAUGHERTY JOHNSON, MICHAEL GLASGOW, DARNELL EARLEY, and GERALD AMBROSE (19-2011/2012),

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:17-cv-10342—Judith E. Levy, District Judge.

Argued: June 9, 2020

Decided and Filed: August 5, 2020

Before: MOORE, SUTTON, and WHITE, Circuit Judges.

---

**COUNSEL**

---

**ARGUED:** Charles E. Barbieri, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, for Appellants Busch, Cook, Prysby, and Wurfel. Margaret A. Bettenhausen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants Snyder, Dillon, and Whitmer. Christopher J. Marker, O'NEIL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellant Glasgow. Edwar A. Zeineh, LAW OFFICE OF EDWAR A. ZEINEH, Lansing, Michigan, for Appellant Johnson. Renner K. Walker, LEVY KONIGSBERG LLP, New York, New York, for Appellees. **ON BRIEF:** Charles E. Barbieri, Allison M. Collins, FOSTER, SWIFT, COLLINS & SMITH, P.C., Lansing, Michigan, Jay M. Berger, Michael J. Pattwell, CLARK HILL PLC, Lansing, Michigan, Philip A. Grashoff, Jr., SMITH HAUGHEY RICE & ROEGGE, Grand Rapids, Michigan, for Appellants Busch, Cook, Prysby, and Wurfel. Margaret A. Bettenhausen, Richard S. Kuhl, Nathan A. Gambill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellants Snyder, Dillon, and Whitmer. Christopher J. Marker, O'NEIL, WALLACE & DOYLE, P.C., Saginaw, Michigan, William Y. Kim, CITY OF FLINT, Flint, Michigan, Edwar A. Zeineh, LAW OFFICE OF EDWAR A. ZEINEH, Lansing, Michigan, Frederick A. Berg, Jr., BUTZEL LONG, P.C., Detroit, Michigan, Sheldon H. Klein, BUTZEL LONG, P.C., Bloomfield Hills, Michigan, Todd R. Perkins, THE PERKINS LAW GROUP PLLC, Detroit, Michigan, Alexander S. Rusek, WHITE LAW, PLLC, Okemos, Michigan, Barry A. Wolf, Flint, Michigan, for Appellants City of Flint, Croft, Johnson, Glasgow, Earley, and Ambrose. James W. Burdick, BURDICK LAW, P.C., Bloomfield Hills, Michigan, James A. Fajen, FAJEN AND MILLER, PLLC, Ann Arbor, Michigan, for Appellant Rosenthal. Renner K. Walker, Corey M. Stern, LEVY KONIGSBERG LLP, New York, New York, Hunter J. Shkolnik, NAPOLI SHKOLNIK PLLC, New York, New York, for Appellees.

MOORE, J., delivered the opinion of the court in which SUTTON and WHITE, JJ., joined. SUTTON, J. (pp. 9–11), delivered a separate concurring opinion.

---

**OPINION**

---

KAREN NELSON MOORE. This is an appeal from one of the many strands of the Flint Water Crisis litigation. The City of Flint and City and State officials (collectively, "Defendants-Appellants") allegedly caused, sustained, and covered up the poisoning of the people of Flint.[1]

---

[1]The Defendants-Appellants party to this appeal are: Darnell Earley, Gerald Ambrose, Howard Croft, Michael Glasgow, Daugherty Johnson, the City of Flint, Richard Dale Snyder (former Governor of Michigan), Andy Dillon (former Treasurer of Michigan), Gretchen Whitmer (present Governor of Michigan), Stephen Busch, Patrick Cook, Michael Prysby, Bradley Wurfel, and Adam Rosenthal.

As Defendants-Appellants for the most part concede that our prior decisions control the outcome of this case, we dispose of their appeal in short order.

LeeAnne Walters and Marlana Sirls (collectively, "Plaintiffs-Appellees") are part of the coordinated stream of Flint Water Crisis cases brought by individual plaintiffs. *See In re Flint Water Cases (Sirls et al. v. Michigan et al.)*, No. 5:17-cv-10342-JEL-EAS, 2019 WL 3530874, at *1 (E.D. Mich. Aug. 2, 2019). "Counsel for the plaintiffs in these cases were selected as co-liaison lead counsel." *Id.* On December 15, 2017, counsel filed a "Master Complaint" on the *Walters* docket that contained all the various allegations and claims made by plaintiffs across the coordinated litigation. *See* R. 115 (*Walters* Docket, No. 5:17-cv-10164-JEL-MKM, Master Compl.) (Page ID #1367). Walters and Sirls then filed "short-form" complaints on their individual dockets on February 1, 2018, charting out the components of the Master Complaint that they were adopting as their own, including named defendants, alleged injuries, and claims. *See* R. 72 (*Sirls* Docket, No. 5:17-cv-10342-JEL-EAS, Short-Form Compl.) (Page ID #691); R. 124 (*Walters* Docket, No. 5:17-cv-10164-JEL-MKM, Short-Form Compl.) (Page ID #1674). After defendants filed motions to dismiss, plaintiffs moved for leave to amend the Master Complaint, and defendants responded to plaintiffs' motion for leave to amend. *See Sirls*, 2019 WL 3530874, at *1–2. The district court assessed the motions to dismiss and the motion to amend simultaneously and rendered "a single omnibus decision" on August 2, 2019. *Id.* at *2.[2] The district court granted in part and denied in part both sets of motions and adopted aspects of the proposed amended Master Complaint as the operative complaint. *Id.* Defendants-Appellants timely appeal from that decision.

Defendants-Appellants in this case are largely the same as those that were parties in *In re Flint Water Cases (Waid v. Snyder)*, 960 F.3d 303 (6th Cir. 2020).[3] There are no new

---

[2]The district court followed the same procedure in this case that it had in the underlying decision in *In re Flint Water Cases (Waid v. Snyder)*, 960 F.3d 303 (6th Cir. 2020). We noted in *Waid* that we approved the district court's omnibus approach in *Waid v. Snyder*, No. 18-1967, slip op. (6th Cir. Feb. 19, 2019) (order). *See Waid*, 960 F.3d at 321–22 n.6.

[3]One other defendant, Liane Shekter-Smith, was a party to the appeal in *Waid*, 960 F.3d 303. Plaintiffs' claims against Shekter-Smith were dismissed by the district court in this case as time-barred. *See Sirls*, 2019 WL 3530874, at *11–13.

Defendants-Appellants in this case, the claims at issue are the same, and we again take their appeal at the motion-to-dismiss stage.**4**  In *Waid*, we decided that the same City and State officials who are Defendants-Appellants in this case plausibly violated plaintiffs' substantive due process right to bodily integrity and are not entitled to qualified immunity.  *Id.* at 311. We additionally rejected the City of Flint's and Governor Whitmer's arguments that the Eleventh Amendment requires their dismissal from the case.  *Id.*  The full court denied *en banc* rehearing of *Waid* on July 14, 2020.  *Waid v. Snyder*, No. 19-1472, slip op. (6th Cir. July 14, 2020) (order). At oral argument in this case, all but one Defendant-Appellant conceded that *Waid* controls our outcome here.**5**

The outlier is Daugherty Johnson, who encourages us to view the allegations against him in this case differently than those levied against him in *Waid*.  When pressed at oral argument for any meaningful distinctions between the two sets of allegations, Johnson tried to re-direct our focus to the plausibility of the pleadings.  Yet, Johnson acknowledged that, like in *Waid*, the allegations here include that he pressured Michael Glasgow to go forward with the switch to Flint River water even though the water treatment plant was not ready.  *See Waid*, 960 F.3d at 326.  And Johnson acknowledged that, like in *Waid*, he is alleged to have stonewalled the county health department's attempt to investigate water-quality issues.  *See id.*  In light of these key similarities, which formed the basis for our decision with respect to Johnson in *Waid*, we conclude that there is no reason to treat Johnson any differently under the facts alleged in this case.

Separately, Plaintiffs-Appellees, like the plaintiffs in *Waid*, ask that we remand for the district court to decide whether former State Treasurer Andy Dillon should be dismissed in light of the district court's decision in *Brown v. Snyder (In re Flint Water Cases)*, No. 18-cv-10726,

---

**4**One difference, we note, is that Plaintiffs-Appellees in this case allege that they were injured by lead-poisoning only, and not *legionella*.  *See* R. 72 (*Sirls* Docket, No. 5:17-cv-10342-JEL-EAS, Short-Form Compl. at 5) (Page ID #695); R. 124 (*Walters* Docket, No. 5:17-cv-10164-JEL-MKM, Short-Form Compl. at 5) (Page ID #1678). The parties, however, do not assign any significance to that difference for purposes of this appeal.

**5**Our decision in *Waid*, in turn, primarily rested upon *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 933 (2020), and *Boler v. Earley*, 865 F.3d 391, 412–13 (6th Cir. 2017).  *Waid* is our most comprehensive decision to date, in that it addressed allegations against Glasgow, Johnson, Rosenthal, Cook, Snyder, and Dillon (all of whom were not parties in *Guertin*).

2020 WL 1503256, at \*9 (E.D. Mich. Mar. 27, 2020). *See Waid*, 960 F.3d at 332. We see no issue with doing so.

Finally, we find it necessary to address the concurrence's criticisms of *Waid*—a stand it takes today after no judge of this court requested a poll for *en banc* rehearing of that case. *See Waid v. Snyder*, No. 19-1472, slip op. (6th Cir. July 14, 2020) (order). *Guertin v. Michigan*, in the concurrence's view, requires that we treat higher-ups differently than officials making decisions on the ground. *See* 912 F.3d 907 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 933 (2020). According to the concurrence, the majority in *Waid* skirted that command. That is the wrong reading of the law and a faithless reading of the facts.

In theory, the concurrence knows that our job is to "closely examine[] the culpability of each defendant to see if they 'personally' committed the sort of 'conscience-shocking' conduct required to sustain a substantive due process claim." Conc. Op. at 9 (quoting *Guertin*, 912 F.3d at 929). Yet, the concurrence quickly tumbles out of that test and into one of its own devising: if officials lower in the state-wide hierarchy are entitled to immunity, then higher-up government officials are entitled to immunity, too, according to the concurrence.

The concurrence points out that three high-ranking officials—Daniel Wyant (Director of the Michigan Department of Environmental Quality ("MDEQ")), Nick Lyon (Director of the Michigan Department of Health and Human Services ("MDHHS")), and Eden Wells (Chief Medical Executive at the MDHHS)—were dismissed in *Guertin* because they "were too far removed from the relevant conduct to justify allowing the claims against them to proceed." Conc. Op. at 9. The *Guertin* court held that these officials were not among the "chief architects" of the crisis and, accordingly, that they were entitled to immunity. 912 F.3d at 926. Snyder, the concurrence contends, is similarly situated.[6]

Wyant is a conceivable comparator for Snyder. As director of the MDEQ, Wyant in all likelihood was aware of the crisis and should have done more to stop it. The *Guertin* court

---

[6]Andy Dillon's conduct is not worth debating. The parties in *Waid* agreed that it was appropriate to remand the claims against Dillon to the district court to decide whether to dismiss Dillon in light of the district court's decision to dismiss him in a related case. *See* 960 F.3d at 332. That is what we did in *Waid*, and we do the same here.

dismissed Wyant, however, because the complaint did not ground the theoretical in particular allegations. "Plaintiffs d[id] not plausibly allege Wyant *personally* made decisions regarding the water-source switch, nor d[id] they allege he *personally* engaged in any other [conscience-shocking] conduct." *Id.* at 929 (emphasis added). And, of course, Wyant could be held accountable only "for his own conduct, not the misconduct of his subordinates." *Id.* For those reasons, the *Guertin* plaintiffs' claims against Wyant failed. As for Lyon and Wells, the MDHHS was responding to the health crisis created by other State and City officials. Thus, the involvement of the MDHHS, the department that Lyon and Wells oversaw, was attenuated to begin with. In the end, the *Guertin* court not only dismissed Lyon and Wells, but two lower-level MDHHS employees as well. *See id.* at 929–32.

The concurrence concedes that Snyder, unlike the high-ranking officials dismissed in *Guertin*, was personally involved in the decision to switch Flint's water supply, and that Snyder knew that there was no plan to update Flint's water treatment plant to make Flint River water safe. "But," according to the concurrence, "the complaint nowhere alleges that [Snyder] knew or should have known about the risk that move posed." Conc. Op. at 10. That assertion is hard to fathom.

The plaintiffs in *Waid* alleged that Snyder personally helped coordinate the City of Flint's switch from clean Detroit Water and Sewerage Department ("DWSD") water to contaminated Flint River water. *Waid*, 960 F.3d at 330. Plaintiffs-Appellees additionally allege in this case that Snyder not only knew that the Flint River would serve as an interim water source, but that he knew that there were no plans to update the water plant so that it could treat the water properly before making the switch. R. 185-2 (Am. Master Compl. at 35–36, ¶ 109) (Page ID #5076–77). Moreover, Snyder's staff were told that "the 'expedited timeframe' for switching to Flint River water 'is less than ideal and could lead to some big potential disasters down the road.'" *Waid*, 960 F.3d at 314 (internal quotation omitted).

Soon after the switch went into effect, General Motors cut off the Flint River water supply to its engine plant because the water's chloride levels were so dangerously high that it would corrode the machinery. *Id.* at 315–16. In response, a member of Snyder's executive staff

sent an email to the full team about comments in the media about Flint residents being treated as "lab rats," and fretting that it might come out that the chemical composition of the water "exceeded health-based water quality standards." *Id.* at 316 (internal quotation omitted). To prevent the crisis from snowballing, the executive staff member recommended that the Governor's office ask the Emergency Manager for the City of Flint to switch Flint back to its prior source of clean water, the DWSD. *Id.* Snyder's legal counsel agreed that the Flint River water issues were "'downright scary' and "advised that, '[t]hey should try to get back on the [DWSD] system as a stopgap ASAP before this thing gets too far out of control.'" *Id.* (internal quotation omitted).

Yet, Snyder did not try to switch Flint back to clean water, or to mitigate the crisis with protective equipment, or to acknowledge the dangers of the water contamination—even after his own chief of staff told him that "[t]he water issue continues to be a danger flag." *See id.* at 318 (internal quotation omitted). Snyder's office, instead, coordinated with the MDEQ Director of Communications to create political cover for Snyder's administration. *See id.* Snyder's office also managed to supply water coolers for State buildings, while refusing to distribute water filters to the people of Flint. *See id.* at 330. From these allegations, it is hard to imagine that Snyder was kept in the dark about the cause and extent of the crisis, and we do not hesitate to conclude that Snyder's alleged personal actions demonstrated deliberate indifference.

But the concurrence's point is not really about the plausibility of the pleadings or whether Snyder's conduct shocks the conscience. The concurrence's real issue with *Waid* is that we refused to dismiss a high-ranking government official from the litigation. To escape the *Waid* plaintiffs' and Plaintiffs-Appellees' extensive and personal allegations against former Governor Snyder, the concurrence peddles a new appendage to qualified-immunity doctrine that effectively would grant high-ranking officials absolute immunity regardless of the allegations. Snyder, in the concurrence's view, simply is too high-up to be accountable. Perhaps that would be the case for a different governor in a different set of circumstances. Perhaps that would be the winning argument had the crisis in Flint not been under the public eye and had it not been orchestrated and debated at the highest levels of state government. But on these facts, Snyder is alleged to have coordinated the switch to Flint River water knowing that the water would not be treated for

contamination. Snyder is alleged to have refused to switch Flint back to clean water, knowing that the people of Flint were being poisoned. Snyder is alleged to have hidden the full extent of the dangers and to have failed to take remedial actions. On these facts, Snyder is named to defend his own actions, not those of his subordinates, and there is no basis for dismissing him from this case. Thus, although we fail to see why saying so is relevant to the task at hand, we stand by our decision in *Waid*.

In conclusion, we hold that *Waid* controls our outcome here and accordingly **AFFIRM** the district court's denial of the motions to dismiss as to all Defendants-Appellants except former Treasurer Dillon. We **REMAND** for the district court to decide in the first instance whether Dillon should be dismissed in light of the district court's decision in *Brown*, 2020 WL 1503256, at *9.

---

**CONCURRENCE**

---

SUTTON, Circuit Judge, concurring.   Just months ago, we decided *Carthan*, since recaptioned *Waid*, a case involving the same parties pressing the same claims in the same motion-to-dismiss posture.  *See In re Flint Water Cases* (*Waid*), 960 F.3d 303 (6th Cir. 2020). A majority rejected each defendant's arguments for dismissal.  *Id.* at 311.  When it comes to resolving this functionally identical dispute, we must follow the same path.  That's why I concur.

But in my respectful view, *Waid* erred in allowing claims to proceed against Governor Rick Snyder and Treasurer Andy Dillon.  *Waid* came after our first Flint water case, *Guertin v. State*, 912 F.3d 907 (6th Cir. 2019), which allowed substantive due process claims to proceed against several Michigan officials for their role in the crisis.  Right or wrong, *Guertin* did not casually assign blame to all named parties.  It closely examined the culpability of each defendant to see if they "personally" committed the sort of "conscience-shocking" conduct required to sustain a substantive due process claim.  *Id.* at 929.  Of the twelve defendants named in *Guertin*, the court allowed claims to proceed against seven.  *See id.* at 916.  It dismissed the claims against the remaining five.  *See id.*

*Guertin* dismissed claims against three high-ranking officials:  Daniel Wyant (Director of the Michigan Department of Environmental Quality), Nick Lyon (Director of the Michigan Department of Health and Human Services), and Eden Wells (Chief Medical Executive at the Department of Health and Human Services).  *See id.* at 916, 927, 929–31.  In each case, it concluded that the officials were too far removed from the relevant conduct to justify allowing the claims against them to proceed.  *See id.* at 929–31.  Wyant, it's true, "was aware of some of the issues arising with the water supply."  *Id.* at 929.  And he admitted to his department's "colossal failure" to act.  *Id.*  But while the conduct of certain "individuals within his department was constitutionally abhorrent," we found the bulk of the responsibility lay with them.  *Id.*  And we declined to "hold [him] accountable for . . . the[ir] misconduct" despite some knowledge of the danger posed.  *Id.*

Lyon and Wells, for their part, were "unjustifiably skeptical" of a study showing the danger posed by the water supply. *Id.* at 930. Lyon "tr[ied] to discredit [the] study despite his own department's knowledge that it show[ed] a real problem." *Id.* (quotation omitted). And Wells "discourag[ed] her department [from] look[ing] further" into the study and directed resources toward undermining its conclusions. *Id.* (quotation omitted). Both of those defendants engaged in affirmative conduct that worsened the water crisis. Even so, *Guertin* held, that action "f[ell] well-short of conscience-shocking conduct." *Id.* at 930–31. Too much separation existed between Lyon and Wells and the "chief architects" of the crisis to hold them to account. *Id.* at 926.

Held to these yardsticks, I cannot see a basis for denying qualified immunity to Governor Snyder. *See Waid*, 960 F.3d at 336, 338 (Murphy, J., concurring in the judgment in part and dissenting in part). No doubt, he "was personally involved in the decisional process which led to the transition" to the contaminated water supply. R. 620-3 at 47 (19-1425). But the complaint nowhere alleges that he knew or should have known about the risk that move posed. The plaintiffs argue that (1) Snyder's "senior executive staff was immediately aware" of issues with the water supply and actively concealed it, *id.* at 65; and (2) Snyder waited too long to declare a state of emergency after hearing troubling reports, *id.* at 151. But *Guertin* forecloses both theories. *See Waid*, 960 F.3d at 338 (Murphy, J., concurring in the judgment in part and dissenting in part). It rejected efforts to impute liability from subordinates to their supervisors. *Id.* And it clarified that high officials resisting early evidence of danger cannot make out a constitutional violation. *Id.* Snyder seems *less* like the scheme's "chief architect[]" than Wyant, Lyon, and Wells. *Id.* at 336 (quotation omitted). As Judge Murphy pointed out in his partial dissent in *Waid*: "If Snyder's *subordinates* were too far removed from the crisis to remain defendants, that fact should make us think twice before allowing claims to proceed against an official even further removed." *Id.* at 337. Snyder played only an attenuated, supervisory role. And while he evidently delayed acting on information, that failure by itself does not give rise to liability. *See id.* at 338.

The plaintiffs no doubt allege that Snyder knew there was not yet an "agreed upon plan in place" for upgrading Flint's water treatment plant when he "authorized the switch to the Flint

River." R. 185-2 at 34–36 (19-2000). But that hardly suggests that he foresaw that the water "would not be treated for contamination," Maj. Op. at 7–8, when the switch actually happened a year later, let alone that he inferred that the switch posed a "substantial risk of serious harm." *Waid*, 960 F.3d at 336 (Murphy, J., concurring in the judgment in part and dissenting in part) (quotation omitted).

An even weaker case stands against Treasurer Dillon. *See id.* at 338–39. He played a role in the original negotiations that caused Flint to switch to the contaminated water supply. And, yes, he may have received certain emails discussing complications with the transition to the use of the Flint River water. But none of the emails suggests he knew or should have known of the health risk. Still less do they show that he could have done anything to stop it. The majority would leave the choice whether to dismiss to the district court. I would stop the litigation here and now.

I do not doubt that Governor Snyder and Treasurer Dillon could have done more to avert the contamination of Flint's water supply. Not every mistake in governing, however, amounts to a substantive due process violation. To survive a motion to dismiss, the plaintiffs must plead facts indicating that the officials' conduct "shocks the conscience." *Id.* at 336 (quotation omitted). On my reading, neither Governor Snyder nor Treasurer Dillon reached that inglorious low. If I had *Waid* before me, I would dissent on that basis. Because I don't, I concur.